**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

HANEEFAH R. MAHMOOD,
          Appellant,

       v.

SOCIAL SECURITY
    ADMINISTRATION,
          Agency.

DOCKET NUMBER
SF-0752-17-0677-I-2

DATE:  May 7, 2024

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Andrew Kim, Esquire, Atlanta, Georgia, for the appellant.

Joshua Fizer and Matthew C. Miller, Baltimore, Maryland, for the agency.

**BEFORE**

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman

**FINAL ORDER**

The appellant has filed a petition for review of the initial decision, which sustained her removal.  Generally, we grant petitions such as this one only in the following circumstances:  the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as expressly MODIFIED to make clear that, consistent with the Board's decision in *Boo v. Department of Homeland Security*, 122 M.S.P.R. 100 (2014), the agency provided evidence demonstrating that the appellant made the statements identified in both specifications of the false statement charge for her own private material gain, and to clarify the administrative judge's findings concerning the appellant's affirmative defense of reprisal for equal employment opportunity (EEO) activity, we AFFIRM the initial decision.

## BACKGROUND

The appellant was previously employed as a Senior Case Technician with the agency's Disability Adjudication and Review office in Seattle, Washington. *Mahmood v. Social Security Administration*, MSPB Docket No. SF-0752-17-0677-I-1, Initial Appeal File (IAF), Tab 15 at 34. By a letter dated May 2, 2017, the agency proposed to remove the appellant based on four charges: (1) failure to cooperate with an administrative investigation, with a single specification; (2) conduct unbecoming a Federal employee, with four specifications; (3) lack of candor, with two specifications; and (4) false statements, with two specifications. *Id*. at 94-113. The charges arose out of the appellant's interactions with her supervisor on three separate occasions: on January 19, 2017, during the agency's effort to investigate another employee's failure to receive two original emails; on

March 14, 2017, during the agency's investigation into allegations that the appellant had harassed another employee; and during a conversation and subsequent emails on March 29, 2017, regarding whether the appellant was completing one of her assigned duties. *Id*. at 94-100. The appellant provided written and oral replies to the proposed removal. *Id*. at 60-90. After considering the appellant's responses, the deciding official issued a decision sustaining all of the charges and specifications and removing the appellant, effective August 4, 2017. *Id*. at 35-49.

The appellant timely filed an appeal with the Board challenging her removal. IAF, Tab 1. The appellant also raised a number of affirmative defenses, including a violation of her *Weingarten* rights,[2] retaliation for her EEO activity, a due process violation based on ex parte communications between several agency officials involved in her removal, and a violation of the applicable collective bargaining agreement. *Id*. at 2-12; *Mahmood v. Social Security Administration*, MSPB Docket No. SF-0752-17-0677-I-2, Refiled Appeal File (RAF), Tab 15 at 2. The appeal was dismissed without prejudice to refiling at the parties' request, and was subsequently automatically refiled. IAF, Tab 30; RAF, Tab 1; *see* RAF, Tab 6. Following the first day of the appellant's requested hearing in the refiled appeal, the parties informed the administrative judge that they had reached a tentative resolution of the appeal, and consequently, the administrative judge postponed the remaining scheduled hearing days. RAF, Tabs 29-30, 35. After the parties were unable to reach a final agreement to settle the appeal, *see* RAF, Tab 31 at 1, the appellant withdrew her request for a hearing and requested a decision on the written record, RAF, Tabs 39, 40.

---

[2] *Weingarten* rights involve a private sector employee's right, articulated in *National Labor Relations Board v. J. Weingarten, Inc.*, 420 U.S. 251, 260 (1975), to request union representation at an investigatory interview that the employee reasonably believes might result in disciplinary action. *See Howard v. Office of Personnel Management*, 31 M.S.P.R. 617, 621 (1986), *aff'd*, 837 F.2d 1098 (Fed. Cir. 1987) (Table). Congress granted Federal employees *Weingarten*-type rights in the Civil Service Reform Act. 5 U.S.C. § 7114(a)(2)(B).

After the parties submitted their close of record briefs, RAF, Tabs 41-43, the administrative judge issued an initial decision affirming the agency's removal action, RAF, Tab 44, Initial Decision (ID). The administrative judge found that the agency proved all four charges and all of the attendant specifications. ID at 8-25. She also found that the appellant failed to prove any of her affirmative defenses. ID at 25-32. Finally, the administrative judge found that the agency established a nexus between the misconduct and the efficiency of the service, and determined that the removal penalty was reasonable under the circumstances. ID at 32-35.

The appellant has timely filed a petition for review. Petition for Review (PFR) File, Tab 1. The agency has filed a response. PFR File, Tab 3.

## DISCUSSION OF ARGUMENTS ON REVIEW

On review, the appellant challenges the administrative judge's finding that the agency proved the charge of failure to cooperate with an agency investigation, arguing that her conduct did not rise to the level of a refusal to cooperate. PFR File, Tab 1 at 9-12. The appellant also argues that the administrative judge erroneously credited her supervisor's version of events related to the conduct unbecoming and lack of candor charges, even where it was in conflict with the documentary evidence or was insufficiently specific. *Id*. at 12-16. Finally, the appellant argues that the administrative judge applied the incorrect legal standard for the false statement charge by considering whether the appellant made the purportedly false statements with the intent to deceive, but without considering whether she made the statements for "private material gain," as required by the Board in *Boo v. Department of Homeland Security*. *Id*. at 16-17. The appellant has not challenged any of the administrative judge's findings denying her affirmative defenses.

<u>The administrative judge correctly concluded that the agency proved the charge of failure to cooperate with an administrative investigation.</u>

Regarding the charge of failure to cooperate with an administrative investigation, the appellant does not dispute the administrative judge's finding that she exited the interview room before she was asked or answered any substantive questions for the agency's investigation. *See* ID at 9-10. Instead, the appellant reiterates her argument that she was reluctant to answer questions due to the fact that she did not have a union representative present with her in-person, and she faults the agency for failing to contact the union to see whether a representative was available in-person on the day of her interview. PFR File, Tab 1 at 9-11. The appellant also notes that she did not actually refuse to answer any question and blames the agency for failing to attempt to reschedule the meeting so that a union representative could be present in-person. *Id*. at 11-12. She argues that her conduct did not constitute a failure to cooperate with the investigation, and the administrative judge erred by concluding that the agency proved the charge as written. *Id*. As support for her argument, the appellant cites a number of Board and U.S. Court of Appeals for the Federal Circuit (Federal Circuit) cases that she argues demonstrate that her actions did not rise to the level of an actual refusal to cooperate with the investigation. *See id.* at 9-12 (citing *Modrowski v. Department of Veterans Affairs*, 252 F.3d 1344, 1350 (Fed. Cir. 2001); *Pedeleose v. Department of Defense*, 110 M.S.P.R. 508 (2009); *Negron v. Department of Justice*, 95 M.S.P.R. 561 (2004); *Hankins v. Department of the Army*, MSPB Docket No. DA-0752-13-0423-I-1, Final Order (Sept. 8, 2014)).

The events discussed in this charge occurred on January 19, 2017, when the appellant was summoned to an interview room to discuss the facts and circumstances surrounding another employee's failure to receive two original emails. IAF, Tab 18 at 19; *see* ID at 9. Before the appellant's supervisor could begin questioning the appellant, she expressed her belief that the investigation concerned her pending EEO complaint and stated that she wanted her

representative present. IAF, Tab 18 at 19. After informing the appellant that she could not have an EEO representative, the appellant left the room. *Id*. She returned approximately 4 minutes later and again demanded her choice of a representative. *Id*. at 20. Her supervisor informed the appellant that she could have a union representative assist her, at which point the appellant requested a break for a few minutes to decide what to do and again left the room. *Id*. at 20-21. After returning, the appellant restated her belief that she had the right to have "any rep" assist her, but stated that she wanted a union representative, and that she wanted to have the representative appear in-person.[3] *Id*. at 21. The appellant's supervisor informed the appellant that she could not direct the manner of how her union representative appeared and informed her that the representative could appear by telephone. The appellant said "bye" and subsequently left the room, never to return, without answering any substantive questions for the interview. *Id*.

Concerning the appellant's claims that she was entitled to have an in-person union representative and that she rightfully refused to continue the interview until an in-person representative was available, as the agency correctly notes, the administrative judge considered and rejected this argument. PFR File, Tab 3 at 11-12; *see* ID at 10-11; RAF, Tab 20 at 115. The administrative judge specifically found that the applicable collective bargaining agreement did not require the agency to allow an in-person union representative, and so the appellant could not condition her cooperation with the agency investigation on a representative's physical presence at the interview. ID at 10-11, 30-31. We have reviewed the applicable language in the collective bargaining agreement and discern no reason to disturb the administrative judge's finding. RAF, Tab 20 at 115; *see Crosby v. U.S. Postal Service*, 74 M.S.P.R. 98, 105-06 (1997) (finding no reason to disturb the administrative judge's findings when she considered the

---

[3] As the union representative noted, the appellant's office was located in Seattle, Washington, and the union representatives were located at a different office, a significant distance away, in Spokane, Washington. *See* IAF, Tab 42 at 198, 205.

evidence as a whole, drew appropriate inferences, and made reasoned conclusions on issues of credibility); *Broughton v. Department of Health and Human Services*, 33 M.S.P.R. 357, 359 (1987) (same).

Further, as the administrative judge noted, the union representative who was on call the day of the appellant's interview indicated in deposition testimony that she did not believe that the collective bargaining agreement required her physical presence for a *Weingarten* meeting, and noted that because she was not located in the same city as the appellant, she would not have even been able to be physically present for the meeting and did not typically attend *Weingarten* meetings in-person. ID at 10-11; *see* Tab 42 at 198, 205-08, 225-26. Consequently, the appellant's argument that the agency was obligated to reschedule the interview to accommodate a union representative's physical presence is also without merit. PFR File, Tab 1 at 10-12.

Further, to the extent the appellant is arguing that her actions are distinguishable from those in the Board and Federal Circuit cases she cites on review, because she never actually "refused" to answer any questions, her argument is inapposite. PFR File, Tab 1 at 9-12. As the administrative judge noted, after the agency denied the appellant's request for an in-person union representative, the appellant made clear her intention not to participate in the interview when she said "bye" to the interviewer before answering a single substantive question, left the interview room for a final time, and made no further attempt to contact the interviewer to continue the interview. ID at 9-11. In all of the cases cited by the appellant on review other than *Modrowski*, the Board ultimately upheld the charge of failure to cooperate with an investigation based on conduct substantially similar to the appellant's conduct in this case. *See Pedeleose*, 110 M.S.P.R. 508, ¶¶ 3, 18-20 (upholding the charge of failure to cooperate where the appellant refused to answer any questions on grounds that the investigation was unlawful); *Negron*, 95 M.S.P.R. 561, ¶¶ 10-11, 31 (upholding the charge of failure to cooperate with an investigation based on the

appellant's refusal to provide relevant documents in his possession in response to an inquiry); *Hankins*, MSPB Docket No. DA-0752-13-0423-I-1, Final Order, ¶¶ 13, 15 (upholding a charge of failure to cooperate in an investigation where the appellant did not "outright refuse[]" to answer any particular question, but nevertheless was "evasive, refused to answer questions directly, and failed to provide candid and complete answers").[4]

Finally, although the Federal Circuit reversed the charge of failure to cooperate with an investigation in *Modrowski*, it did so because the information the agency provided to the appellant in that case created considerable ambiguity about the scope of the appellant's immunity from *criminal* prosecution, and the appellant did not have an opportunity to meet with his attorney to discuss the scope of his immunity before he refused to answer the questions—an issue that is not pertinent to the instant appeal. *See Modrowski*, 252 F.3d at 1350-53. Accordingly, we find no error in the administrative judge's determination that the agency met its burden of proving the charge of failure to cooperate with an agency investigation.

The administrative judge correctly concluded that the agency proved all specifications of the conduct unbecoming a Federal employee and lack of candor charges.

The appellant also challenges the administrative judge's findings that the agency proved the conduct unbecoming a Federal employee and lack of candor charges. PFR File, Tab 1 at 12-16. Regarding the conduct unbecoming charge, the appellant attacks the administrative judge's credibility findings, arguing that she failed to address the discrepancy between the October 27, 2017 deposition testimony of the appellant's supervisor, in which the supervisor responded that it was not his "recollection" that the appellant said anything about requesting a representative prior to leaving the interview room for the first time during their

---

[4] We are not citing to this nonprecedential decision as precedent in support of our decision, but rather in order to respond to the appellant's argument relying on this decision. *See* 5 C.F.R. § 1201.117(c)(2).

January 19, 2017 interview, and the contemporaneously prepared notes from another supervisor who was acting as a note-taker for the interview, reflecting that the appellant did request a union representative before leaving the interview for the first time. PFR File, Tab 1 at 12-13; *see* IAF, Tab 18 at 15; RAF Tab 42 at 100. The appellant argues that this discrepancy, and the administrative judge's failure to address it, calls into question the administrative judge's reliance on the note-taker's notes for other purposes—namely, her reliance on the notes to establish that the appellant did not request a break before exiting the interview for the first time at 10:01 a.m. on January 19, 2017, which was relevant to the first specification of the conduct unbecoming charge. PFR File, Tab 1 at 12-13; *see* ID at 12-13.

We agree with the agency that the appellant's reliance on this purported discrepancy is misplaced. PFR File, Tab 3 at 16-17. As an initial matter, the appellant's supervisor merely stated, during a deposition that occurred 9 months after the incident in question, that it was not his "recollection" that the appellant requested her representative before leaving the meeting for the first time. *See* RAF, Tab 42 at 100. This apparent memory lapse had no bearing on the challenged specification, which concerned whether the appellant requested a break. Further, the administrative judge considered the appellant's claim that she requested a break at 10:01 a.m., but declined to credit it. ID at 12-13; *see* IAF, Tab 18 at 21. In making this determination, the administrative judge credited the note-taker's contemporaneous notes and the appellant's supervisor's hearing testimony, both of which identified the appellant's latter request for a break at approximately 10:13 a.m., and reasoned that if a prior request for a break at 10:01 a.m. had occurred, the testimony or the notes would have reflected the request. ID at 13. Given the administrative judge's demeanor-based finding, we defer to her credibility determination. *See Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002) (observing that the Board generally must give deference to an administrative judge's credibility determinations when they

are based, explicitly or implicitly, on the observation of the demeanor of witnesses testifying at a hearing).

With respect to the lack of candor specifications concerning the events on January 19, 2017, the relevant specifications charge the appellant with inaccurately annotating the meeting transcript to reflect that she asked for, and was granted, a break before leaving the interview room for the first time. IAF, Tab 15 at 95. As with the conduct unbecoming specifications, for each of these specifications, the administrative judge credited the supervisor's version of events, noting that he had credibly and consistently testified at the hearing about these issues, and that his recollection of events was corroborated by the note-taker's notes. ID at 12-13. By contrast, the administrative judge declined to credit the appellant's claim that she requested and was granted a break, concluding that she had provided inconsistent and evolving explanations for why she left the room, stating at various times that she did so because she "had a panic attack" after being denied access to her union representative, or that she was unable to talk and was "gasping for air" when she left the room. *Id.*; *see* RAF, Tab 41 at 66-67. It is possible that "gasping for air" could be considered a symptom of a "panic attack," so it is at least arguable that the appellant's varied explanations for why she left the room were not necessarily inconsistent. Nevertheless, we have reviewed the record as a whole, including the supervisor's testimony and the note-taker's notes, and we see no reason to disturb the administrative judge's finding in this regard. *See Haebe v. Department of Justice*, 288 F.3d at 1301.

Accordingly, with regard to the specifications of the charges of conduct unbecoming a Federal employee and lack of candor related to the events of January 19, 2017, we decline to disturb the administrative judge's decision to credit the appellant's supervisor's testimony and the note-taker's contemporaneous notes over the appellant's version of the incident. *See* ID at 12-13; IAF, Tab 15 at 94-95. The appellant's attempts on review to have the

Board reweigh this evidence are unpersuasive. PFR File, Tab 3 at 5-7; *see Crosby*, 74 M.S.P.R. at 105-06 (finding no reason to disturb the administrative judge's findings when she considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions on issues of credibility); *Broughton*, 33 M.S.P.R. at 359 (same).

Regarding the specification of the conduct unbecoming charge related to the March 29, 2017 interaction between the appellant and her supervisor, the appellant argues on review that the administrative judge failed to consider the lack of specificity in the supervisor's email to the appellant outlining the appellant's unprofessional conduct during their in-person conversation. PFR File, Tab 1 at 14-15; *see* IAF, Tab 18 at 6-7. The relevant specification alleged that, on the morning of March 29, 2017, after the appellant's supervisor realized that no one was covering the phones, he approached the appellant at her workstation and asked her whether she was aware that she was scheduled to cover the phones, and in response, the appellant made a number of disrespectful or inappropriate statements, which were summarized in the proposed removal. IAF, Tab 15 at 94-95, 99. In a subsequent email later that day, the appellant's supervisor informed the appellant that her conduct that morning was unacceptable and directed her to follow the standards of conduct expected of Federal employees. *Id.* at 99; *see* IAF, Tab 18 at 6.

On review, the appellant argues that her supervisor's email did not contain the same level of detail as was contained in the notice of proposed removal, so the administrative judge erred by crediting the supervisor's recollection of what the appellant said over the appellant's assertion that she did not make the alleged statements. PFR File, Tab 1 at 14-15. The appellant also appears to argue that the administrative judge did not assign sufficient weight to the fact that there was a more than 5-hour delay between when the March 29, 2017 interaction occurred and when the appellant's supervisor emailed the appellant to inform her that the interaction was unacceptable and unprofessional. *Id.* at 15.

As the agency correctly notes, the administrative judge did acknowledge the 5-hour gap between the interaction and the supervisor's email, and credited the supervisor's explanation that he spent that period of time consulting with the agency's human resources and legal offices on how to appropriately address the issue with the appellant. PFR File, Tab 3 at 19; *see* ID at 15-16. Regarding the appellant's suggestion that the lack of specificity in the supervisor's email undercuts the allegations in the notice of proposed removal, we disagree. The administrative judge credited the supervisor's account of the appellant's statements based on witness demeanor, along with the appellant's own admission that she perceived the supervisor's statements as harassing, retaliatory, and defamatory. She concluded that the appellant likely reacted negatively to the supervisor's statements in the manner described in the proposed removal. *See* ID at 15-16. The appellant's arguments on review are not sufficient to disturb the administrative judge's finding. *Haebe*, 288 F.3d at 1301 (stating that the Board may overturn demeanor-based credibility determinations only when it has "sufficiently sound" reasons to do so); *see Faucher v. Department of the Air Force*, 96 M.S.P.R. 203, ¶ 8 (2004) (stating that "sufficiently sound" reasons for overturning an administrative judge's demeanor-based credibility determinations include circumstances when the administrative judge's findings are incomplete, inconsistent with the weight of evidence, and do not reflect the record as a whole).

Finally, regarding the two specifications of conduct unbecoming a Federal employee, the agency alleged that on two separate occasions on March 14, 2017, the appellant hung up the telephone on her supervisor while he was still speaking to her. On review, the appellant denies hanging up on her supervisor, but she does not offer any specific argument challenging the administrative judge's findings regarding these specifications. PFR File, Tab 1 at 7; *see* ID at 16-17. Accordingly, we see no reason to disturb those findings on review. *See Crosby*, 74 M.S.P.R. at 105-06; *Broughton*, 33 M.S.P.R. at 359.

We modify the initial decision to clarify that the agency proved that the appellant made the charged false statements with the requisite intent to defraud agency officials for her own private material gain.

With respect to the false statement charge, the appellant argues on review that the administrative judge analyzed the charge under the wrong legal standard. PFR File, Tab 1 at 16-17. The specifications of the false statements charge relate to an email the appellant sent on March 29, 2017, in which she accused her supervisor of vowing to use his position to "slander [the appellant's] credibility during the course of [her] work performance," and threatening the appellant that he would "discipline [her] for speaking out," neither of which was true. IAF, Tab 15 at 95; *see* IAF, Tab 18 at 8-9. As the appellant correctly notes, to prove a charge of false statements or falsification, an agency must prove by preponderant evidence that the appellant: (1) supplied wrong information; and (2) she did so knowingly and with the intention of defrauding, deceiving, or misleading the agency. *Haebe*, 288 F.3d at 1305; *see Leatherbury v. Department of the Army*, 524 F.3d 1293, 1300 (Fed. Cir. 2008). In *Boo v. Department of Homeland Security*, the Board clarified that the second element of the charge requires that the agency prove that the appellant's falsification was done for her own "private material gain." *Boo*, 122 M.S.P.R. 100, ¶¶ 10-12 (modifying Board case law to incorporate the elements of falsification established in *Leatherbury*). The appellant argues that, although the administrative judge correctly identified the required intent element of the falsification charge, she failed to address whether the agency had proven that she made the statements in the email for her own private material gain. PFR File, Tab 1 at 16-17. The appellant argues that because neither the initial decision nor the agency's filings discussed whether the appellant made the statements in the email for her own "private material gain," neither specification can be sustained. *Id*.

Although the administrative judge did not specifically identify the "private material gain" language from *Boo* in the initial decision, her findings clearly

reflect that the appellant made the statements in the emails for her own private material gain. ID at 20-25. As the agency correctly notes, the Board emphasized in *Boo* that what is defined as private material gain should be considered "quite broad," and constitutes any "advantage to be secured [by the employee]," and is "by no means limited to monetary gains arising from a falsification." *Boo*, 122 M.S.P.R. 100, ¶ 13 (quoting *Bradley v. Veterans Administration*, 900 F.2d 233, 237 n.6 (Fed. Cir. 1990)); *see* PFR File, Tab 3 at 23. In discussing whether the appellant made the statements in the email with the intent to deceive or mislead the agency, the administrative judge observed that the appellant copied her second-level supervisor on the email in which she made the false statements, and concluded that it was more likely true than not that the appellant did so with the purpose of misleading her second-level supervisor into taking action against her supervisor based on the accusations. ID at 22; *see* IAF, Tab 18 at 8. Based on what the administrative judge identified as the appellant's obvious frustration with her supervisor, as well as her effort to falsely cast her supervisor in a negative light, the administrative judge concluded that the appellant made the false statements with the intent to deceive her second-level supervisor about the actions of her first-level supervisor. *See* ID at 22-23.

This same evidence provides ample support for the conclusion that the appellant made the false statement for her own private material gain. As the administrative judge indicated, the appellant attempted to cast her supervisor in a negative light by making the false statements about him with the goal of spurring the second-level supervisor to take action against her supervisor. ID at 22. If the appellant had succeeded in convincing her second-level supervisor to take some sort of action against her supervisor, it would have been to her advantage. *Id*. Such an objective would fit within *Boo*'s broad definition of private material gain. *See Boo*, 122 M.S.P.R. 100, ¶¶ 10-13. Alternatively, even if the appellant's objective was merely to bolster her second-level supervisor's perception of the appellant at her own supervisor's expense, by characterizing her supervisor in a

negative or unflattering light, that would also meet *Boo*'s broad definition of the private material gain element. *See id*. Accordingly, to the extent the administrative judge failed to specifically conclude that the appellant sent the email identified in the false statements charge for her own "private material gain," we modify the initial decision to conclude that, based on our review of the record, the agency met its burden of proving this element, and therefore proved both specifications of the charge and the charge itself.

Finally, although the appellant does not challenge the administrative judge's findings regarding any of her affirmative defenses on review, we take this opportunity to clarify one of those findings. In rejecting the appellant's affirmative defense of reprisal for EEO activity, the administrative judge concluded that, although the responsible agency management officials were aware of the appellant's prior EEO activity, there was little evidence that they had any motive to retaliate against the appellant, and the record was devoid of any evidence that the appellant's EEO activity played any role in the decision to remove her. ID at 28-29. In analyzing this defense, the administrative judge cited to the standard set forth in *Savage v. Department of the Army*, 122 M.S.P.R. 612, ¶¶ 48-51 & n.12 (2015), *overruled in part by Pridgen v. Office of Management and Budget*, 2022 MSPB 31, and the standard set forth in *Warren v. Department of the Army*, 804 F.2d 654, 656-58 (Fed. Cir. 1986). ID at 27. The correct standard for analyzing these claims of EEO reprisal is set forth in *Pridgen*, 2022 MSPB 31.

In this case, the EEO activity at issue is a formal complaint in which the appellant alleged discrimination and reprisal in violation of Title VII, the Age Discrimination in Employment Act (ADEA), and the Rehabilitation Act of 1973. RAF, Tab 12 at 28-29. To prove a claim of retaliation under Title VII or the ADEA, the appellant would need to show that her protected activity was at least a motivating factor in the action under appeal. *Pridgen*, 2022 MSPB 31, ¶¶ 20-22, 30. To prove a claim of retaliation under the Rehabilitation Act, the appellant

would need to show that the prohibited consideration was a but-for cause of the action under appeal. *Id.*, ¶¶ 46-47. In her initial decision, the administrative judge found insufficient evidence to conclude that the appellant's EEO activity motivated either the notice of proposed removal or the removal decision itself. ID at 29. This is tantamount to a finding that the appellant did not satisfy the motivating factor standard. Because the appellant did not satisfy the motivating factor standard, she also did not satisfy the but-for standard. *See Johnson v. Department of Veterans Affairs*, 2023 MSPB 9, ¶ 5 n.2. We find that the appellant received sufficient notice of her burden on this affirmative defense, IAF, Tab 14 at 1-4, and that application of *Pridgen* would not warrant a different result. Additionally, as previously noted, the appellant does not challenge the administrative judge's analysis of this affirmative defense on review. *See Panter v. Department of the Air Force*, 22 M.S.P.R. 281, 282 (1984) (finding that an adjudicatory error that is not prejudicial to a party's substantive rights provides no basis to reverse an initial decision; 5 C.F.R. § 1201.115 ("The Board normally will consider only issues raised in a timely filed petition or cross petition for review."). For the foregoing reasons, we affirm the initial decision sustaining the appellant's removal, as modified by this Final Order.

## NOTICE OF APPEAL RIGHTS[5]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and

---

[5] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction.  If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements.  Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case.  If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**.  As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision.  5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation

for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after you receive</u> this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** <u>after your representative</u> receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of <u>your discrimination claims only, excluding all other issues</u>. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** <u>after you receive</u> this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file

with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) <u>Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012</u>**.  This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[6]  The court of appeals must <u>receive</u> your

---

[6] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

petition for review within **60 days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

*Gina K. Grippando*

FOR THE BOARD: _____

Gina K. Grippando
Clerk of the Board

Washington, D.C.